& Aung Thank you very much. I want to make sure we've got everybody here, because it's like a cast of thousands that are arguing on behalf of the defense. So we've got how many lawyers who are making two minutes? We've got eight lawyers making two minutes each, is that right? Okay. All right. And Mr. Brooke, you have reserved three minutes for rebuttal, so that gives you seven minutes to start. You may proceed. May it please the court. My name is Dr. Adam Brooke, and I am the plaintiff appellant pro se in this case, along with the appellant, the estate of my late mother, Dr. Judith Brooke. Appellant's brief sets forth the law and facts why the court should find, as alleged in the very factually detailed complaint, which should have been accepted on the motion to dismiss, that the named defendants are state actors under Section 1983 and not entitled to immunity. Given the limited time, I will argue as to the state actor status of guardian Joseph Fratolo, Diana Rosenthal as appointed counsel to my mother, and Ira Salzman as appointed evaluator. Lastly, I will review the factual allegations in the complaint that demonstrate that State Court Judge Kelly Levy joined with these defendants with the common, predetermined goal to find my mother a quote-unquote incapacitated person in order to take over her $8 million in assets. This was accomplished by short-circuiting due process steps and depriving her and me as a cross petitioner of a fair trial in the guardianship proceeding. My mother's death caused the New York Appellate Division to state that the appointment issues and the appeal were moot. But Section 1983 is an independent federal right and a different remedy for state actors depriving plaintiffs of due process. Although the district court did not reach the Rooker-Feldman doctrine, since the defendants argue it, I will also address Rooker-Feldman and why it's inapplicable. Why is Joseph Fratolo a state actor? Thomas S. v. Morrow, 781 F. 2nd. 367 held that a guardian's pervasive power to make decisions for the ward, including decisions that the ward objects to, is power that is quote, governmental in nature, unquote. Like the North Carolina statute at issue in Thomas, New York's mental hygiene law, Article 81, grants a court-appointed guardian extensive powers to make decisions for his ward regarding her person and gives the guardian control of her property. I refer the court to mental hygiene law, section 81.21, powers of guardian, property management, and section 81.22, powers of guardian, personal needs. The record shows that court-appointed guardian has a history as a repeatedly disciplined NYPD officer for a continuing pattern of disregard for and violation of the rights of others, which he continued in this guardianship. Judge Levy facilitated this by ignoring the part 36 rules of the chief judge for fiduciaries intended to prevent cronyism. The last order expending Rotolo's power over my mother's person and property had demonstrably disastrous results for her life and her assets. To quote from West versus Atkins, 487 US 42, the powers exercised by Rotolo as an Article 81 court-appointed guardians were quote, possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of state law, end quote. The record shows that on hearing dates September 6th and October 18th, 2019, my mother was competent and testified in open court to her clearly expressed objections to any guardianship or removal of my power of attorney signed by her 13 years earlier. That's joint appendix 80 and 204 and complaint paragraphs 147 and 468. The guardianship court overrode that clear testimony by ruling the opposite on January 3rd, 2020 in a final trial day without my mother present, expanding Rotolo's power. Forcing an individual into and involuntarily confining her in an institution, whether it is a nursing home or the state penitentiary, is a traditional function of the state and can lawfully be done by private parties only when the state delegates them authority to do so. That's Zinnerman versus Birch, 494 US 113. The complaint, paragraph 468, joint appendix 204, alleges that Rotolo forced my mother into the Mary Manning Walsh Nursing Home against her will and forced her to remain there against her will. Matter of Drayden versus Jewish Association, 127 AD 3rd, 526, holds, quote, mental hygiene law section 81.36c provides that when a guardian seeks the authority to remove the incapacitated person from her home and community against her wishes, the incapacitated must be provided with a hearing on notice before the article 81 court or set forth the factual basis for dispensing with the hearing. But there was no such hearing on notice to my mother and no court order setting forth good cause for dispensing with such a hearing. Rotolo abused his authority and violated mental hygiene law, section 81.36c. The Supreme Court in West versus Atkins, 487 US 42 explains that when the government appoints an individual to fulfill a legal obligation of the state, that individual becomes a state actor. The state court, which is a division of the state government, appointed Rotolo as my mother's guardian in order to fulfill the state's legal obligation under mental hygiene law sections 81.20 through 81.22 to appoint guardians. For persons adjudged, quote unquote, incapacitated. That the state appointed Rotolo to fulfill the state's legal obligation was sufficient to render Rotolo a state actor. Rotolo also abused his- So wait, what do you think is your best case for that proposition, that the guardian is a state actor? Well, I think there are multiple things. So, for one thing, he forced my mother against- What is the best case, I mean, what case do you think- West versus Atkins. What's that? West versus Atkins, 487 US 42. Rotolo also abused his position as my mother's temporary guardian by his schemes and false allegations, such as that I did not pay for his chosen home care agency, in order to have the judge fully expand his temporary powers and take over her person and assets. Without warning, on August 23rd, 2019, Rotolo emailed the court claiming falsely that I was being sent invoices for home care services every two weeks and I wasn't paying them. But now we learn from Allegiance Brief, page 25, that they were in fact sending the invoices to Rotolo. So he lied to the court, he deceived the court, and then he did it again at the January 3, 2020 trial. He claimed that I hadn't made payments for home care services for two months. But he knew from his own December 9th, 2019 email, with the attached spreadsheet from Allegiant, that I had paid over $221,200 for home care services for my mother over a six month period. All right, well you've reserved- Three minutes for rebuttal. Three minutes for rebuttal, that's right. So we'll hear first from Ms. Greenwald. For two minutes. Good morning, I'm sorry, good afternoon, and may it please the court. Blair Greenwald on behalf of MHLS and the MHLS attorneys appointed to represent Judith Brooke in the state court proceeding. I'll just make three quick points. First, there's no dispute that appellants have abandoned any claim against MHLS as an entity. Second, the district court correctly applied controlling precedent to hold that the MHLS attorneys appointed to represent Judith Brooke here did not function as state actors under section 1983. The Supreme Court and this court have held that attorneys appointed to represent a private individual are not state actors, even if they are supplied and funded by the state. This is both this court's decision in Milan and the Supreme Court's decision in Polk County. This court has applied that principle to New York custody proceedings, as well as guardianship proceedings. And the same principle applies to the MHLS attorneys appointed here to represent a private individual and only a private individual, not the state. Indeed, appellants have not preserved any argument on appeal that after MHLS withdrew from the state court proceeding, the private attorney appointed to represent Judith Brooke in the same capacity, the appellants have not preserved an argument that he was a state actor. In addition, the complaint fails to allege specific facts to support a conspiracy between the MHLS attorneys and the state judge to achieve some specific outcome. Appellants suggest in a conclusory fashion that the MHLS attorneys entered into some kind of conspiracy to have Judith declared incapacitated in order to collect fees. But under state law, it doesn't matter what the outcome is. MHLS attorneys are entitled to collect fees, or at least seek fees. And here they declined to do so. Finally, as an alternative basis, the court may affirm the dismissal based on the Rooker-Feldman Doctrine. This lawsuit attacks the merits of the state court judgment, which falls squarely in the heartland of the Rooker-Feldman Doctrine, which prohibits appellants' attempt to use the federal courts to effectively appeal a state court judgment. If the court has no further questions, we would urge the court to affirm the dismissal. All right. Thank you, Ms. Greenwald. Now we have Ms. Ferreira. Thank you. Good afternoon, judges. My name is Lisette Ferreira, and I represent Joseph Rutolo, the court-appointed guardian in the guardianship proceeding at issue in the complaints. May it please the court. First, with respect to the various factual allegations that Dr. Brook has made regarding my client, Joe Rutolo, I believe it's important to note that these allegations have been found to be simply incredible. After numerous hearings and thorough vetting and several decisions— Well, I mean, I think since state action is really sort of the key, or at least the basis on which the district court dismissed, maybe you're better off focused on that. So I guess the principal argument being made by Dr. Brook is that West v. Atkins supports the contention that your client is a state applicant. Yes. Well, in West, the doctor, the defendant doctor in West was under a contract with the state to provide medical services to the inmate. And thus, he was effectively an employee of the state. Also in West, the inmate had no other choice. He had to use that doctor. West also applied the test in determining whether or not there was state action of looking to see whether there was a duty to the state and the interests of the state were served. And so applying that same test here supports the district court's determination that Mr. Rutolo is not a state actor. He's not employed by the state and his loyalty is not to the state. And underscoring that is the mental hygiene law, article 81.2383. And that provides that a guardian shall exhibit utmost degree of trust, loyalty, and fidelity to its ward. So under that provision of the mental hygiene law and under New York law, a guardian does not act in the interests of the state. A guardian acts and serves the interests and must act in the best interests of his ward. Well, you're saying that it's a person more akin to like a defense lawyer in an appointed counsel case. What is your best case, do you think? I believe that the best case is Terry versus Suffolk County, which is a second circuit court. It's a summary order here, but also Milan, cited by the attorney general's office as well, another second circuit case. And in both of those, the same test was applied, which is to look at whether the guardian or the individual at issue serves the interests of the state or of their client or ward. And in both those cases, the court found that in Milan, it was with respect to a law guardian, but in Terry, it was with respect to a guardian. But the mere appointment by the court does not render those individuals state actors, even if they are appointed and funded by the state. It's even stronger argument with respect to the guardian, because my client, although appointed by the state, is not funded by the state. He's a private individual acting as a private actor. Cool. Thank you. Thank you. We'll now hear from Mr. Frank Kaur. Am I pronouncing that right? Yes. Just like the baseball player? Yes. Good afternoon. My name is Joseph Frank Kaur. I'm here on behalf of Ira Salzman. May it please the court. Mr. Salzman was the court-appointed evaluator. He gave an opinion on the petition for guardianship. I'm going to rest on my papers. It's really just two points I want to bring up very quickly. As a court-appointed evaluator, he's not a state actor. My best case is Shabtai versus Shabtai, 2021, U.S. District, Lexis, 73759. And in Shabtai, the court found, that's the Southern District of New York, Judge Kotel, that the guardian, the lawyer, and the court evaluator, none of them are actors of state law. And then Mr. Salzman does have an additional defense immunity. My best case is Faraldo versus Kessler, Eastern District, New York. That was 2008, U.S. District, Lexis, 5367. And that basically found that a court evaluator appointed to the New York, a court evaluator appointed under New York Mental Hygiene Law 81.09, just as Mr. Salzman was, is entitled to immunity for acting as an arm of the court, similar to a guardian ad litem or a court-appointed doctor. They're a nonjudicial person who fulfills a quasi-judicial role. There are some other arguments in the papers, but I'll rest on the papers unless there's a question. All right. Thank you very much, Mr. Crancourt. We'll now hear from Mr. Reynolds for two minutes. Good afternoon, Your Honors. May it please the Court, Matthew Reynolds, on behalf of Appellees Carl Huth Esquire and Huth Reynolds LLP. Your Honors, I respectfully join in the arguments of my fellow counsel for Appellees. My law partner, Mr. Huth, and my law firm were engaged, along with fellow appellees Ian Shane Brown and the Shane Brown firm, to represent Howard Muser, a private citizen, in the underlying state court proceeding as outside litigation counsel. For the reasons stated in the court's decision below and the reasons articulated in our papers, there is no way that the plaintiff appellate here could allege, much less show, that my law partner and my law firm as privately retained counsel to a private litigant in a state court proceeding could be found to have acted under color of state law for purposes of a 42 U.S.C. 1983 claim. Unless the Court has any other questions, I rest on the papers. All right. Thank you very much, Mr. Reynolds. Now we'll hear from Ms. O'Leary. Good afternoon. May it please the Court. My name is Erin O'Leary, and I represent Appellee Kenneth Barocas. Mr. Barocas was a court-appointed attorney. Unless the Court has any questions, I'd like to rest on my papers. That's fine. Thank you. Thank you. Next, we have Mr. Rutherford. May it please the Court. My name is David Rutherford. I represent Allegiant and Ann Reen. I incorporate all the arguments previously made. I would just make the additional point with respect to my two clients that there is no 1983 or 1988 claims causes of action asserted against them. The only causes of action asserted against them are Counts 7 through 9, which are medical malpractice, fraudulent billing, and unjust enrichment. Even if they had asserted a 1983 claim, my clients are not state actors. They're private individuals. And unless there's any questions, I'd rest on my papers. Well, the District Court basically concluded that there was no federal jurisdiction when normally the failure to plead a state actor is not a jurisdictional defect. It's a failure to plead. It's a 12B6, not a 12B1. And so that would mean that there was jurisdiction on the federal claims. They might be dismissed, but then there still could be supplemental jurisdiction over your client, right? Correct. The court could exercise supplemental jurisdiction. Now, the District Court didn't even entertain that. We never got that far. Right. And so should we be sending this back or should we decide on our own that supplemental jurisdiction would not be appropriate? Well, there's already an action pending at 60 Center Street against all of us. There's no need to exercise supplemental jurisdiction over the state court claims. They're already being pursued in state court. The same claims? Same claims? Yes. Well, not the 1983 and 1988 claims. The same state law claims. Same state claims.  Thank you. Thank you. And next we have Mr. Kunter. Am I pronouncing that right? Yes, you are. I please the court, I'm Charles Kutner. I represent the Mary Manning Walsh Nursing Home Company, Incorporated. It is a not-for-profit New York corporation. It is owned by the Archdiocese of New York. It employed eight other defendants in this case. Dr. Logerquist, Dr. Pua, Nurse Moe, Nurse Natividad, Arthur Akhbarov, Doris Bermudez, Navjot Sepla, and Marie Sweet-Mingoa. Diversity jurisdiction has been abandoned at this point. The only question that would be left for us, and we did make the proper motion, was whether we were state actors. And I don't believe there's any dispute that the nursing home and its employees were not acting on behalf of the state of New York in any capacity. Thank you very much, your honors. If you have any questions. Well, I mean, I guess there would still be, I mean, you're named in state law claims, no? Correct, your honor. There is currently pending a claim across the street. But the same question I guess I had for Mr. Rutherford, which is supplemental jurisdiction is an option where there's federal jurisdiction. But it's typically at the pleading stage, not something that a district court would exercise. In fact, might even be reversed if it did. So any thoughts on that subject? I would say that in the pleading, jurisdiction was not, there was no supplemental claim as to us. It was a direct claim based on jurisdiction. That was wrong because there is no diversity. The residents of- The federal question jurisdiction over- The federal question jurisdiction was not pled against us in action number one. It was attempted in action number two. And the court found that we could not possibly be state actors and there was no conspiracy with the judge. Thank you, your honor. All right, thank you. And last, I think by my count, is Mr. Rubin. Good afternoon, your honor. My name is Wayne Rubin. I represent Dr. Jason Cooper. He is a defendant in the Brooke 2. The claim against him is alleged negligent supervision of the medical care provided to Judith Brooke. There's no supplemental, the claim is based on supplemental jurisdiction. But since there is no subject matter jurisdiction in number two, you don't even get to that issue. So that's not something- Why is there no subject matter jurisdiction? Because it's all based on Mr. Rotola supposedly being a state actor. Now there's no claim in two that he conspired with the judge to put Judith Brooke into the nursing home, Mary Manning. It's just that because he's a- was appointed guardian, he's a state actor. And anything he touches after that point is state action. And the problem with the plaintiff's reliance on Atkins is, and the Fourth Circuit's opinion, is that after Polk, the Fourth Circuit seemed to be of the opinion that providing professional services, even if you were a state employee, wasn't state action. You had to find that the state employee also had control over the- somehow over the life or the property of the person he was guardian for. And based on that, they then wrongly decided the Fourth Circuit, the Atkins case, because in that case, there was a employee of the state, a doctor, but he had no control over the- you know, whether the plaintiff would be moved here or there. And therefore found that there was no state action. Of course, the Supreme Court rejected that analysis and say, look, you know, you guys missed it. If you're an employee, you're basically going to be a state actor. Also, unless the court has some other questions, I'll rest on my brief. No, I think not. All right, thank you very much, Mr. Rubin. So, Dr. Brook, you have three minutes for rebuttal. Okay, I hope that's enough time, because a lot of people to rebut. Ms. Rosenthal, the case that you want to look at is Tower v. Glover, 467 U.S. 914. And that case says that when- in that case, there were public defenders who intentionally tried to have their client lose the case, and the court found that they were liable under Section 1983. And the court went into a whole explanation that the immunity for public defenders in criminal litigation is borrowed from the old English barristers. And you can read- your law clerks can read the very interesting history. But the Supreme Court went on to say that when there's intentional conduct, public defenders in criminal litigation are suable under 1983. So- and in this case, there's all kinds of intentional conduct by Ms. Rosenthal. She waived- so Judge Levy solicited a waiver of my mother's appearance from Rosenthal. Rosenthal never spoke with my mother. Rosenthal was told repeatedly that my mother wanted the hearing postponed to be present. My mother had just gotten back from the hospital home the night before. And she went ahead and waived it anyway. Even when I played the tape recording of my mother saying she wanted the hearing postponed. The second thing about that is the court- she also misunderstood Polk v. Dotson. Polk v. Dotson says, quote, with respect to Dotson's Section 1983 claims against Shepard, we decide only that a public defender does not act under color of state law when performing a lawyer's traditional function as contained to a defendant in a criminal proceeding. NRA Facebook IPO 986 F sub 2nd 428 says grants of immunity should be narrowly construed. I think if you want to make a bigger case of this, you should say that courts are wrongly, wrongly construing Polk to other cases. Now, in terms of Mr. Saltzman, he cites a number of lower court decisions from pro se plaintiffs who wrote incoherent arguments that did not connect with Supreme Court opinion. Saltzman attested to his report, quote, unquote, under penalty of perjury. And Antwon v. Byers from the U.S. Supreme Court says that when there's an attesting witness, said there was a prosecutor who was an attesting witness, that they are suable under Section 1983. In addition, Fleming v. Saxner is the case you want to look at also. Has six factors, the 2nd, 5th, and 6th are issue here. In particular, the financial compensation of the court evaluator, because in one case, there'll be the court evaluator, but in the next case, there'll be the attorney for a petitioner, and the next case, there'll be the proposed guardian. And the financial conflicts of interest prevent them from getting quasi-judicial immunity. The case for that is Rodriguez v. Providence Community Corrections, 191 F sub 3rd, 758. And finally, in terms of Mr. Rotolo, the cases Estelle v. Gamble, very famous case, West v. Atkins, Tower v. Glover as well. I mean, what about Milan v. Wertheimer, where this court basically said that guardians are not state actors? I'm glad you asked that question. Regarding that decision and the district court decisions, those cases were decisions in which you had pro se plaintiffs, and they were not competently... Why does that matter, that it's a pro se plaintiff? Well, I think you need to look at what the U.S. Supreme Court says. Not at what, you know, in a brief... It wasn't properly argued before this court. Well, but it's a decision of this court. We're bound by the decisions of... Well, you're more bound by the U.S. Supreme Court, and you are empowered to go back and look and say, well, this is what the U.S. Supreme Court said in Polk. This is what they said in West v. Atkins. This is what they said in Tower v. Glover. You have to... But we're not free to overturn a panel ruling on an issue about whether guardians are state actors. So I think you have to engage with Milan v. Wertheimer, not just ask us to disregard it. Well, I think saying Milan is wrongly decided because West v. Atkins says that, you know, it goes on and explains how the circuit court in that case misunderstood that the reason for the immunity is not because they're a professional acting in their capacity. It's the particular function of the state-appointed criminal defense attorney that is the reason because they are adversarial to the state. So a guardian is not adversarial to the state in the same way that a criminal defense attorney is adversarial to the state. And the fact that they were adversarial to the state is the only reason why Polk v. Dotson said that state-appointed criminal defense attorneys are immune in criminal proceedings. No, I just want to make sure you understand that we can't overturn a prior panel of our court. It would require an en banc court, I mean, the full court to overturn a panel. Do you understand that? I didn't realize that was an en banc decision. I mean, if we need to go en banc, we'll go en banc. But I think that I don't remember that case in detail at the moment. But it's in my briefs. And it has to look, does that pertain to a guardian? And what were the functions? Did that guardian force the ward into a nursing home against her will in violation of mental hygiene law 81.36c? I don't think so. I never saw a case like that. All right. All right, well, thank you all. We will reserve decision, as we have with the other cases on the calendar. That.